B. TAIT, Appellee, v. ROBERT B. REID and EFFIE N. REID, Appellants.

**Real property:** CONTRACTS: ASSIGNMENT: EFFECT. A vendor's in-
1 terest in a contract for the sale of land is assignable; and its assignment carries with it and vests in the assignee all of the rights of the assignor, including the right of forfeiture.

**Same:** FORFEITURES: BURDEN OF PROOF: EVIDENCE. Forfeitures are
2 not favored in law; and the party seeking to enforce a forfeiture has the burden of proving such facts as, under the terms of the contract, will entitle him thereto.

**Same:** FORFEITURE: EVIDENCE. Default in the payment of taxes,
3 failure to make payments provided in the contract promptly and to perform conditions regarding insurance, existing at the time notice of forfeiture was served, will authorize enforcement of a forfeiture provision, either at the suit of the vendor or his assignee.

**Same:** WAIVER. Where the assignee of the vendor's interest in a land
4 contract diligently notified the purchaser of his default, and that strict performance would be insisted upon, he did not waive his right of forfeiture by refusing partial performance.

*Appeal from Cedar Rapids Superior Court.*—HON. C. B. ROBBINS, Judge.

THURSDAY, FEBRUARY 20, 1913.

THIS action is to recover the possession of land sold under contract, on the ground that the contract has been forfeited by failure to perform its conditions.—*Affirmed.*

*Crissman, Linville & Churchill,* for appellants.

*Chas. D. Harrison,* for appellee.

GAYNOR, J.—This action was commenced on the 2d day of November, 1910, and is brought to recover the possession of certain real estate in the city of Cedar Rapids, the possession of which defendants claim to hold under and by virtue of a contract of purchase, entered into between them and one H. G. Webster on the 10th day of April, 1907.

It appears from the record in this cause: That on the 10th day of April, 1907, H. G. Webster was the owner of the property in controversy. That he entered into a written contract with the defendants, by the terms of which he undertook and agreed to sell to the defendants all his right, title, and interest in and to the property in controversy for the sum of $2,400, to be paid as follows: $100 on the execution of the contract; $200 on July 1, 1907; and the balance, $2,100, and interest thereon at the rate of 6 per cent, per annum, payable monthly, as follows: $20 or more, payable on or before the 19th day of each and every month from and after this date until said principal sum and interest is fully paid. Payments to be applied first on the interest then accrued, and remainder on the principal sum. "It is further agreed that the party of the second part shall also annually pay all taxes and assessments that may accrue or be levied on said property as they become due and before they become delinquent, including the taxes for the year 1907, and shall also keep the buildings, if any, on said premises constantly insured against loss by fire, lightning, tornado and wind storms, for such an

amount and in such insurance company as may be designated or approved by the party of the first part, such insurance to be written in the name of the said first party. It is hereby expressly agreed that this contract shall not be assigned by the party of the second part, or assigns, unless such assignment shall be satisfactory to and approved in writing by the party of the first part, nor the property used or permitted to be used for any unlawful purpose. It is further expressly agreed by and between the parties hereto that the time and times of payment of all said sums of money, interest and taxes, as aforesaid, is the essence and important part of this contract, and that if any default is made in any of the payments or agreements above mentioned to be made or performed by the said party of the second part, in consideration of the damage, injury and expense thereby resulting, and that may be incurred by or to the party of the first party thereby, this agreement for the sale of said property shall be void and of no effect; and the party of the second part shall have no right or claim in law or equity against the said party of the first part, nor in or to the above-mentioned real estate or any part thereof, and any claim or interest or right said party of the second part may have had hereunder up to that time by reason thereof, or of any other payments or improvements made hereunder, shall on all such default cease, determine and become forfeited without any declaration of forfeiture, reentry or any act of the party of the first part; and if the party of the second part or any other person or persons shall be in possession of said real estate, or any part thereof, he or they shall and will peaceably remove therefrom, or, in default thereof, he or they may be treated as tenants holding over unlawfully after the expiration of a lease and may be ousted and removed as such; or if after such default he or they remain in possession of said real estate with the consent of said party of the first part, they may be treated and regarded as holding said real estate as tenants at will of the said party of the first part, and their tenancy in all to said premises may

be terminated as such, and whether treated as tenants holding over after the expiration of a lease as aforesaid or as tenants at will, said party of the first part may recover possession of said real estate and every part thereof by an action for the forcible entry and detention of real property, as provided for by chapter 3 of title 21 of the Code of Iowa of 1897, and all amendments thereto; but if all said sums of money, interest and taxes are paid, as aforesaid, promptly at the time and times aforesaid, the party of the first part will, on receiving all said money and interest, execute and deliver at his own cost and expense a deed of said premises as above agreed, accompanied by an abstract showing good and sufficient title to said property in the vendor, free and clear of all liens and incumberances. All continuations of said abstract from the date hereof until the delivery of said deed shall be paid for by the party of the second part and added to the balance due hereunder. Executed in duplicate this 19th day of April, A. D. 1907.''

The plaintiff further states that said written contract was duly assigned in writing by the said Webster and wife to James E. Gow, and delivered, together with the warranty deed of the property described in the contract. That on the 2d day of February, 1910, said contract was assigned in writing and delivered by the said James E. Gow to the plaintiff herein, B. Tait, and that on or about the same time the said James E. Gow executed and delivered to the said Tait a warranty deed for said premises.

Tait brings this action, claiming that he is the owner in fee of said property and the owner of the contract entered into between the said Webster and the defendant Reid, and alleging: That the said Reid has failed and refused to perform the conditions of said contract, and has forfeited all right by reason thereof to the possession of the property in controversy in this: That he has failed to make payments on the purchase price as agreed, and failed to make the payment due October 19, 1909, and has failed to make any pay-

ment on the purchase price since that date and has failed to keep the premises insured, has failed to pay taxes before they became delinquent, has failed to pay assessments against the premises, as provided in the contract, and alleges that on November 9, 1909, he served on the defendants a notice of his intentions to declare a forfeiture of their rights under said contract. That he was put to the expense of $1.20 for the service of said notice, and alleges that ever since the defendants have failed to comply with the terms of their contract, have failed to make the payments on the purchase price, failed to pay the taxes on the property before they became delinquent, failed to insure the premises, and failed to pay the expense of the notice of said forfeiture within 30 days of notice of said forfeiture.

Plaintiff further says that on the 10th day of May, 1910, he served on defendants a 30 days' notice to quit. Plaintiff further says that ever since the notice of October 9, 1909, the defendants have been in possession of said premises unlawfully, and he asks that he be given, not only possession of said premises, but also the value of the use of the same since said date. ·

The defendants, for, answer, admit that they made the contract with the Websters, as claimed by plaintiff, admit that on the 9th day of October, 1909, the Websters assigned the said contract to the said James E. Gow and executed him a warranty deed at the same time of the property in controversy, but they claim that the same was made to Gow by the Websters at the request of Tait, the plaintiff herein, and for the use and benefit of the said Tait, and this appears to be a fact from the record in the cause; and it appears from the undisputed evidence in the record that James E. Gow, on the 2d day of February, 1910, duly assigned the Webster contract to the plaintif herein and executed to him a warranty deed of the property in controversy.

Defendants further admit that there was served on them, on the 9th day of November, 1909, a notice of forfeiture,

signed by James E. Gow, and this also appears to be a fact from the record. Defendants deny that they have failed to make the payments provided for in the contract, and deny that they have failed to keep the premises insured, and allege that they have made the payments provided for in the contract, and that the same have been received and retained by the plaintiffs.

It appears that this notice of forfeiture, served on defendants on the 9th day of November, 1909, was served by James E. Gow while he was holding the legal title to the property, and before the same was deeded to the plaintiff, and before the said Gow had assigned the contract in question to the plaintiff. Defendants therefore deny that Gow had any right to forfeit the contract, and deny that the right to forfeit, as provided in said contract, was or is assignable.

There are other matters set up in defendant's answer, but they are not material in the present consideration of the case.

There are three questions here for determination: First. Did the assignment of the contract in question carry with it the right to insist upon a forfeiture in the event of a failure on the part of the vendee therein named to 1. REAL PROP-ERTY: con-tracts: assign-ment: effect. perform the conditions of the contract, upon which the right of forfeiture rested? That this contract, like other contracts, is assignable is not an open question. See *Dorr v. Cory*, 108 Iowa, 725, and *Dorr v. Alford*, 111 Iowa, 278. That it carries with it and vests in the assignee all the rights of the assignor in the contract, including the right of forfeiture, follows logically from the right of assignment; and we hold that in this case the right of forfeiture provided for in the contract between Webster and the defendant vested in the grantees of Webster upon the assignment of the contract to them.

The second question is: Does the evidence show such a violation of the terms of the contract on the part of the de-

fendants that, under and by virtue of the terms of the con-

2. SAME: for-
feitures: bur-
den of proof:
evidence.

tract, the assignee of the contract might insist on a forfeiture? We recognize the rule that has been frequently announced, that the law abhors a forfeiture, and should be strictly construed against the party seeking the forfeiture.

The burden of proof rests on the party seeking forfeiture to show the existence of the facts upon which he predicates his right to forfeiture, and which, under the terms of the contract, entitled him to declare a forfeiture. Has the plaintiff done this?

It was stipulated in the contract that a failure to pay the taxes when due, and before they became delinquent, including the taxes of 1907, a failure to pay the sums agreed to be

3. SAME: for-
feiture: evi-
dence.

paid on the purchase price of the property promptly and at the time therein specified, shall cause the agreement to be void and of no effect; and that if default be made in any of the conditions of the contract all rights under the contract, given to the defendants by the terms of the contract and the agreement for the sale of the property, should be void and of no effect.

According to the terms of the contract, the defendants agreed to pay $20 or more on the purchase price of the property on or before the 19th day of each month. The defendants paid the first two payments provided for in the contract, to wit, the $100 payable on the execution of the agreement, and the $200 payable on the 1st of July, 1907. They therefore became obligated to further pay $20 on the 19th day of May, $20 on the 19th of June, $20 on the 19th of July, and $20 on the 19th of August. It appears, however, that the first payment made on these monthly payments was made on the 19th day of September, and then the defendants paid to Webster the sum of $80.

From the reading of the contract, it is not apparent what the parties meant when it says "payable on or before the 19th day of each month from and after this date," whether this

refers to July 1, 1907, or whether it refers to the date of the contract; but, for the purposes of this case, we will assume that it refers to the 1st day of July, and that on the 19th day of September all the payments required by the contract to be made were made. The next payment, however, would be due on the 19th of October. No payment, or offer to pay, this installment was made until the 14th of November. Then a check for $20 was sent to Gow by the defendant R. B. Reid in a letter reading as follows (this in answer to a letter addressed to Gow by Reid, dated November 1, 1909) : ''Your communications were received in due time, but I had entirely too much to do to answer sooner. In the first place I have receipts from Webster paid to November 19, 1909. I have been looking for the last receipt but have not been able to locate it. If I am mistaken, of course, I will make it right, but I made a note of it in my memorandum that the next payment would come Nov. 19, 1909. I inclose you check for $20.00 for the next payment. . . I will get the taxes taken care of as soon as possible.''

It appears from the record that the statement made by the defendant Reid, of November 14th, was not true; that he had made no payments upon the contract since September 19th; and that the time he wrote this letter and sent this $20 he was in default for the October payment. It appears, without dispute, that between the time of the writing of the letter by Gow to Reid, dated November 1st, and the sending of the letter by Reid to Gow, dated November 14th, and on the 9th day of November, 1909, the said Gow caused to be served on the defendants notice of forfeiture. It further appears that on the 22d day of November the check for $20 sent by Reid to Gow, inclosed in the letter dated November 14th, was returned to Reid, with the statement that the writer was informed by Mr. Webster that he (Reid) was not correct in his statements as to the number of payments he had made, and that the check was not signed in such a way as to be acceptable to the payee therein named. Thereafter nothing was remitted

by Reid on the contract, except the sume of $52, which was sent in a letter addressed to James E. Gow, dated December 3, 1909, which draft was returned to defendant in a letter addressed to him at North Platte, Neb., dated December 7, 1909, which reads as follows: "Cedar Rapids, Dec. 7, 1909. R. B. Reid, Esq., North Platte, Neb.—Dear Sir: Yours of the 3rd inst. inclosing check on the McDonald State Bank dated Dec. 3rd, 1909, signed by E. M. Reid, payable to myself or bearer for $52.00 for two months back payments on your contract of purchase and $12 for insurance, is received. Inclosed herewith I return you this check. I will not receive checks on a bank in Nebraska signed by some one else than the writer of the letter. Send remittance by draft, and the amount you remitted is not sufficient to cover the amount due, including the cost of service of the notice, which is $1.00, and for the further reason that you have not complied with the terms of your contract of purchase for the property involved, and if you do not comply with it within the proper time your rights will be forfeited. Yours truly, Jas. E. Gow."

It further appears that on the 19th day of January, 1910, the defendants again sent to Gow a check for $20, which was returned to the defendants in a letter reading as follows: "R. B. Reid, Esq., North Platte, Neb.—Dear Sir: Your letter of January 19th, 1910, inclosing draft No. 18723 dated Jany. 10th, 1910, issued by the Custer National Bank of Broken Bow, Nebraska, to the Omaha National Bank of Omaha, Neb., for $20.00, which draft is payable to R. B. Reid, has been received. Inclosed herewith I return you this draft. I also returned the check on the McDonald State Bank of North Platte referred to in your letter. I return you this draft for the same reason I returned the check, and that is because you have violated the terms of your contract for the premises commonly known as No. 514 N. 17 St., in the city of Cedar Rapids, Iowa, and have forfeited all of your rights under that contract, and I shall soon commence proceedings for possession of the property. Yours truly"—

which letter was inclosed in an envelope addressed in type-
writing to ''Mr. R. B. Reid, North Plate, Nebraska,'' post-
marked ''Cedar Rapids, Iowa, Jan. 27, 4 P. M.,'' and on the
upper left-hand corner, in typewriting, appears the follow-
ing: ''After five days return to James E. Gow, 315 15th St.,
Cedar Rapids, Iowa.'' It appears further the letter so in-
closed was not signed. Thereafter nothing was done by
defendants, and no further effort made by them to perform
the conditions of their contract.

The following concession was made by the defendants
on the trial of this case in the district court: ''It is conceded
that the city and county taxes due and payable during the
year 1909 on the premises described in the contract, being
the premises in controversy, became delinquent and were un-
paid and the property sold for taxes at the regular tax sale
in the fall of 1909, and that all taxes for 1909 became delin-
quent April 1, 1909.'' It was admitted by the defendant, on
cross-examination, that he had not paid any taxes since Sep-
tember, 1909.

It appears from the foregoing that at the time the notice
of forfeiture was served, to wit, November 9, 1909, the right
of forfeiture on account of failure to perform the conditions
of the contract was complete, in that the defendants had
failed to pay the taxes and assessments against the property,
had failed to make the payments provided for in the contract
promptly and at the times therein stated, and had failed to
perform the conditions touching insurance, as required by
the contract; and we hold that the record shows that at the
time of the service of the notice of forfeiture the right existed
in the plaintiff, or his assignor, to declare and insist upon
such forfeiture.

The next question is: Did the plaintiff and his assignors,
by their conduct, waive their right to insist upon forfeiture
on account of conditions broken? It appears
4. SAME:   that while the property was owned by the
waiver.
Websters, and prior to the 19th day of September, 1909, Mr.

Webster had served a thirty days' notice on the defendants of intention to forfeit the contract in question, and that the thirty days had elapsed before the payment of the $80 by the defendants to Webster on September 19, 1909; and it appears that the defendants then knew and were reminded of the terms of the contract, and that if they did not comply with the terms of the contract steps would be taken to forfeit their rights in the contract, although Webster did not insist upon a forfeiture under this notice and waived his right to forfeiture by accepting the $80.

It appears that when the next payment of $20 was due on the 19th of October, 1909, the defendants again failed too make the payment required to be made on that date, and that on November 1st James E. Gow notified them of this fact; and it appears that they failed to respond thereto until November 14, 1909, when they sent the letter hereinbefore set out, in which they wrongfully or mistakenly claimed to have paid up to November 19, 1909, whereas, in fact, they had only paid up to September 19, 1909, and in this letter they inclosed a check for $20 only.

It appears that prior to this letter, November 14, 1909, and on October 13, 1909, James E. Gow had written to the defendants the following letter: "Cedar Rapids, Iowa, Oct. 13, 1909. Mr. R. B. Reid, N. 17th St., City—Dear Sir: I have today purchased Mr. H. G. Webster's contract with you. I understand that you are paying $20 per month including interest. As per this contract, your next payment will be due Oct. 19th, and I hope you will make your payment on that date. I notice also that the taxes for 1908 are past due, and are now delinquent; amount $32.95. Kindly take care of these at once. I also notice that there is a paving tax of $145.73. My understanding is that you are to take care of this as it becomes due and before it becomes delinquent. My residence is 313 15th St., and you can either leave the money with me or mail me a check for the payments due on the contract. The amount due under your contract is $1,807.89 plus

1908 taxes and special assessments for paving. Yours truly, James E. Gow." To which letter the defendants made no response, except as found in the letter dated November 14, 1909.

It appears further: That on the 9th day of November, 1909, there was served on the defendants a notice to terminate the contract, dated and signed October 23, 1909, which reads as follows:

To Effie N. Reid and R. B. Reid:

You and each of you are hereby notified that I am the owner of the contract signed by you as party of the second part and by H. G. Webster and E. M. Gertrude Webster, parties of the first part, on April 19, 1907. The contract relates to the purchase and sale of the rear 35 feet of lots one and two (1 & 2) in block 5 of Central Park addition to the city of Cedar Rapids, Iowa, as the same is known and designated on the recorded plat thereof, less the southwesterly 10 by 35 feet of lot 2, block 5, which is reserved for alley purposes. The contract was assigned to me October 9, 1909, and you are hereby notified that I intend to forfeit your rights under that contract of purchase because you have failed to make payments as provided for in the contract and because you have failed to pay the taxes and assessments as provided in the contract.

Dated and signed October 23, 1909. James E. Gow.

Served at Lincoln, Nebr., Nov. 9th, 1909.

Exhibit 4.

In the Superior Court of Cedar Rapids, Linn County, Iowa.

Thirty Days' Notice to Quit.

B. Tait, Plaintiff. Robert B. Reid and Effie N. Reid, Defendants.

That the defendants made no response to said notice, and no effort to perform the terms of the contract thereafter, until November 14th, and then only as shown in that letter hereinbefore set out.

From this it appears that the plaintiff at least was diligent, and that it was kept before the minds of the defendants

at all times that unless they performed the contract strictly and upon the terms of the contract, their rights under the contract would be forfeited. Defendant, in his testimony, says: ''I was familiar with the terms of the contract, and knew that if I did not comply with it steps could be taken to forfeit my rights. I had no reason to think that, in case Mr. Gow was the real party in interest he would not forfeit the contract. I have paid no taxes on the property either during the year 1909 or 1910. I did not pay the expense of serving notice of forfeiture although there was mention made of it in one of the letters. I have lived in and occupied the premises in question since May, 1907.''

It appears therefore that the defendant knew the terms of this contract and that the same could be forfeited; that he had no reason to believe it would not be forfeited if he failed to perform the conditions upon which the right of forfeiture rested; knew when the several payments were due as provided in the contract; and on November 9th knew that he had not made the payment due October 19th; that he had not paid the assessment or insurance or taxes, as he had agreed in his contract to do; knew that he had twice received notice of forfeiture and of the intent of his grantor and his grantor's assignees of the contract to insist on forfeiture, and never thereafter did he offer to perform all the conditions of the contract then unfilled and broken. The plaintiff was not obliged to receive checks on foreign banks, and was not required to receive partial payments, but had a right to exact full performance of all the broken conditioins of the contract within thirty days from the service of the notice of forfeiture. To accept a partial performance would be a waiver of the other unperformed and broken conditions of the contract, and would have estopped plaintiff from insisting on the forfeiture; and so the plaintiff was justified in returning to the defendants all checks sent after November 9th, and in rejecting any offer on the part of defendants of any performance of the contract which did not reach the full measure of com-

plete performance. See *Davidson v. Hawkeye Insurance Co.,* 71 Iowa, 536, in which it is said, in the second division, on page 536: "It was the right of the plaintiff to insist on the whole payment. The contract provided that time was the essence of the agreement, and that all payments made might be forfeited if the buyer made any default. The plaintiff could not be allowed to accept partial payment, and at the same time insist that, the payment being only partial, the contract is forfeited, and the partial payment forfeited too. The very act of accepting partial payment was a waiver of strict performance as to the balance of that payment." This language is applicable to the facts in this case, and justified the plaintiff in refusing to accept the defendants' offers on November 14th, December 3d, and January 19th, and was therefore no waiver of the right of forfeiture on the part of the plaintiff.

We find no error in the record justifying reversal, and the case is *Affirmed.*