FRED JANES, Appellant, v. J. K. TOWNE, Appellee.

**VENDOR AND PURCHASER:** Remedies of Vendor—Forfeiture of Contract—Nonwaiver by Sufferance. The failure of the vendor of real estate to avail himself promptly of a contract provision for the forfeiture of the contract on a 30-day notice for the non-payment of matured installments, and his acts in repeatedly ac-

cepting belated partial payments, do not work a waiver of the right, in case of a default, to initiate a forfeiture, in accordance with the contract and the statute, Sec. 12390, Code of 1924.

Headnote 1: 39 Cyc. p. 1395.

*Appeal from Clay District Court.*—JAMES DELAND, Judge.

MARCH 16, 1926.

SUIT in equity, to enjoin the defendant from interference with plaintiff's right of possession of certain real estate. The answer admitted the plaintiff's right to the possession of the real estate. A cross-bill was presented, which declared a rescission of a land sale contract between plaintiff and defendant, and prayed for restoration of the status quo and for general equitable relief. The district court awarded decree to the defendant, and awarded recovery of money paid and of expenses incurred. The plaintiff appeals.—*Reversed.*

*Buck & Kirkpatrick,* for appellant.

*Heald, Cook & Heald,* for appellee.

EVANS, J.—The subject-matter of the controversy is a farm of 130 acres in Clay County. In May, 1919, the defendant purchased this farm from the plaintiff by executory contract, and went into possession thereof on March 1, 1920. The purchase price was approximately $25,000, of which the defendant was to pay, and did pay, the sum of $500 on the date of execution of the contract, and the further sum of $2,500 on January 1, 1920. Interest at 5 per cent was to accrue on the balance of the purchase price, from March 1, 1920, and was to be paid annually. No further payment of the principal was required for a period of five years from March 1, 1920. Time was made of the essence of the contract, and the remedy of forfeiture was provided, as follows:

"In case of the failure of the said parties of the second part to make the payments or any part thereof or perform any of the covenants on their part hereby made and entered into, time being of the essence of this agreement, then this contract

shall at the option of the said parties of the first part and upon giving thirty days' notice in writing of their intention so to do, to second parties, be forfeited and determined, * * *''

The interest falling due on March 1, 1921, was fully paid. The larger part of the interest falling due March 1, 1922, was paid within a few weeks from the due date, and the balance was paid several months thereafter. Of the interest falling due on March 1, 1923, the sum of $644 was paid shortly after the due date, leaving, however, $600 of unpaid interest, no part of which was ever paid.

Because of the failure to pay this interest, notice of intention to forfeit the contract was served upon the defendant February 27, 1924.

The plaintiff was a resident of Steele, North Dakota. The communication between the parties preceding the forfeiture was by correspondence. On January 7, 1924, the defendant mailed to the plaintiff a letter, in which he stated:

''I can't go on this as I realize I am broke. * * * can't go any further, as I have no money and I have done the best I could.''

This letter was followed by another, on January 23, 1924. These letters contained proposals for a new contract, the substance thereof being a proposal that the defendant would convey his interest in the land back to the plaintiff, if the plaintiff would allow him to occupy the land for the year 1924 without payment of rent. This proposal was accompanied by a plea of financial difficulty. The plaintiff replied, declining the proposal, but offering a concession, and pleading financial difficulties of his own. On February 7th, the defendant wrote to the plaintiff as follows:

''I am writing to say that I had a pretty good sale the other day and I am figuring on taking care of the place another year, although I do not, as yet, know whether I will work it myself or have my brother-in-law work it for me, or make some other arrangement as to its operation. I feel it is only proper and fair, inasmuch as you have never made me any deduction on the purchase price of this place, or any deduction on interest payments, and inasmuch as the contract which I hold for it is in reality a mortgage, that I should have the use of the place

during the year of redemption, if, indeed, you decide to fore-
close, which I hope you will not do.''

As indicated in the foregoing letter, the defendant had held
a public sale, and sold off all his farming equipment, and had
moved from the farm. He rented the same, however, for the
season of 1924 to one Mick, who entered into possession as
tenant.

Thereafter, on February 27th, the plaintiff served upon the
defendant and upon Mick the notice of intention to forfeit, as
provided by Section 4299, Code of 1897. The possession of
the land was not surrendered upon the expiration of thirty
days from the service of notice, nor was there ever any tender
of payment of the $600, due for interest of 1923, nor was there
any other offer of performance to any extent. On April 3, 1924,
while the defendant still retained possession through his tenant,
Mick, this suit was brought. Thereafter, on April 27th, the
defendant caused his tenant to remove from the premises, and
then and thereafter abandoned all claim to right of possession.
In June, he filed his answer and cross-bill herein, setting up the
defense which we have already indicated.

The theory upon which the cross-bill is predicated is very
concisely stated in the opening statement of appellee's argu-
ment, as follows:

''The appellee bases his case on the proposition that Janes,
by failing to promptly take advantage of the provision for for-
feiture and continually accepting partial payments of interest
after maturity, waived the conditions of the contract that time
should be of the essence of it, and the right to declare a for-
feiture for nonpayment. It will be noticed from the evidence
that not a single payment after the first was made on time. * * *
The rule is practically universal that, by acceptance of partial
payments of the amount due, and a failure to forfeit promptly
because of defaults, the vendor loses and waives his right to
declare a forfeiture.''

The foregoing was the theory adopted by the district court
in awarding decree.

The initial proposition confronting us is:

Did the plaintiff, upon the facts here appearing, have the
right to avail himself of the forfeiture provisions of his con-

tract in the manner adopted by him? If nay, then the further question would arise whether his adoption of such a course without right to do so, amounted to a rescission of the contract by conduct, or such breach thereof as warranted a rescission by the defendant.

We are very clear that the first question above stated must be answered in the affirmative. We shall, therefore, have no occasion to deal with the second. The reliance of appellee, according to his brief, is upon cases from other jurisdictions than ours, on our first proposition above stated. Though several of our own cases are cited in the brief, nothing is quoted from any of them nor specifically pointed out to us as denying to plaintiff the right of procedure adopted by him. In the absence of quotations therefrom, we have taken the precaution to examine each of them. We find nothing in any of them that militates against the plaintiff's method of procedure. As to the large number of authorities cited from other jurisdictions, we have contented ourselves with an examination of those specially relied on by appellee, as indicated by his quotations therefrom. The substance of the rule recognized in the cited authorities is set forth in 13 Corpus Juris 609, 690, as follows:

"A waiver once made cannot be recalled. Hence, after a party has acquiesced in a breach of the contract, he cannot thereafter urge a forfeiture because of such breach, unless he has given reasonable notice of an intention thereafter to enforce the contract according to its terms. * * * Where a stipulation for performance at a particular time has been waived, the party in whose favor the waiver operates is thereafter bound only to perform within a reasonable time, except in a case where there has been a specific extension of time, in which case it is held that the new time fixed becomes of the essence, as was the case in the original contract. So, where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind *until full notice and a reasonable time for performance is given.*"

It is also stated in 2 Warvelle on Vendors, Section 820, as follows:

"* * * where a forfeiture has been practically waived by

partial payments by the vendee after the time prescribed, the vendor cannot then suddenly stop short and insist upon a forfeiture for the nonpayment of the arrears remaining unpaid, without any previous notice of his intention so to do, if the arrears are not paid.''

The brief of, appellee contains the following quotations from cited authorities: From *Avery v. Kellogg,* 11 Conn. 562:

''The defendant, then, having received this money, on account of the payment due on the 1st of April, must be considered as having waived any advantage from the omission of the plaintiff to make the first payment at the day.''

From *Stow v. Russell,* 36 Ill. 18:

''The first payment was made as stipulated. Other payments were made, not punctually; but, as they were accepted, that was a waiver of the want of punctuality as to the particular day.''

From *Shilanski v. Farrell,* 57 Pa. Super. Ct. 137:

''Certainly the *acceptance of the last payment,* * * * in the absence of any qualifying fact or circumstance, raised the conclusive inference that the defendants intentionally abandoned and relinquished the right to enforce a forfeiture for previous failures to pay on the day.''

From *Robberson v. Clark,* 173 Mo. App. 301 (158 S. W. 854), to the effect that, where the vendor accepted a payment in which the vendee was in default, the vendor waived the right to declare a forfeiture for such default.

It will be noted that the rule relied upon by the appellee is a rule of equity, which is not intended to excuse the obligor from continuing obligation to pay, notwithstanding the sufferance of a patient creditor. It is intended only to protect him against becoming suddenly entrapped by the sufferance previously extended. Its operation upon the creditor is twofold:

(1) If the creditor suffers delay without declaring forfeiture until his debtor has actually paid the amount due, or is ready to pay the same, then the acceptance of payment or the receipt of tender terminates the right of forfeiture for that default.

(2) If sufferance, once given, is to cease, then it must not cease so suddenly as to entrap the debtor. Notice must

be given, and a reasonable time for the defendant to adapt himself to the attitude of the creditor, before a forfeiture shall become effective.

Our statute, Section 4299, Code of 1897, was enacted in response to this rule of equity. In a sense, it has superseded and rendered obsolete the judicial rule, by putting it in definite statutory form. This statute provides:

"Any contract hereafter made for the sale of real estate in the state of Iowa, and which provides for the forfeiture of vendee's rights therein upon the happening of certain conditions, shall not be forfeited or canceled unless, thirty days before a declaration of forfeiture is made, a written notice be served on the vendee or assignee, notice of whose rights as assignee has been conveyed to vendor, and on the party in possession of said real estate, which notice * * shall contain a declaration of an intention to forfeit said contract, and the reason therefor."

The contract in this case conformed in its terms to the terms of the statute, and gave to the defendant herein thirty days of grace after notice of intention to declare forfeiture for default. The contract gave to the plaintiff no right to declare a forfeiture without first giving thirty days' notice of intention. Such notice being served upon the defendant, he could have cured his default by paying the rent then in arrears. If he had done so, it would have terminated the right of the plaintiff to declare a forfeiture for that default. The notice served upon the defendant declared upon no other default. In the event of such payment, the defendant would have come within the protection of the rule of equity contended for by his counsel, and likewise within the protection of Section 4299. Failing to pay or to tender, he failed to bring himself within the scope either of the rule of equity or of the statute. The plaintiff was never in default. His long sufferance did not forbid his subsequent demand for payment. He waived the punctuality, but did not waive the payment. The sufferance operated solely as a favor to the defendant. Under our statute, it could not operate to endanger him. He was secure at all times in thirty days of grace after written notice of intention. Neither the

sufferance nor the subsequent notice imposed upon him any additional penalty, nor acceleration of any due date.

We deem the rights of the parties fully controlled by our statute here quoted. Were it otherwise, we can see no reason in equity why the plaintiff's ultimate remedy under his contract should be impaired by the sufferance extended to the defendant. This is not a case where the seller seeks to enforce a forfeiture for a default after such default has been cured by payment or tender.

The decree entered below, must, accordingly, be reversed.— *Reversed.*

De Graff, C. J., and Stevens and Albert, JJ., concur.

Morling, J., not participating.