SPRAGUE, WARNER & COMPANY, Appellant, v. IOWA MERCAN-
TILE COMPANY et al., Appellees.

**RECEIVERS:** Administration of Estate—Discretion—Approval by
Court. A receiver may exercise sound discretion in many mat-
ters relating to the care and management of the property in
his custody, subject to the subsequent approval of court, which
will be given when he has acted in good faith, and what he
has done appears to have been beneficial to the parties; but his
appointment is, ordinarily, primarily for the purpose of pre-
serving the property, to the end that it may not be dissipated
by the owner, but so handled that it may ultimately be distrib-
uted among the parties entitled thereto.

**CONTRACTS:** Breach of Contract—Repudiation. If, before time of
performance, one party to a contract absolutely repudiates
it, and unequivocally refuses to perform the same, the other
party may treat such repudiation as a breach thereof, and sue
for damages.

**RECEIVERS:** Administration of Estate—Insolvency—Contracts. A
receiver of an insolvent mercantile company was required,
within a reasonable time after his appointment, if he desired
to adopt a contract of purchase of goods, to inform the seller
of his election to do so, and the seller was not required to hold
the goods for any unreasonable length of time, awaiting the re-
ceiver's decision to elect to carry out the contract; and, where
the receiver sold the stock and closed out the business of the
company, the day after learning of unfulfilled contracts of a
wholesaler with it, to sell and deliver merchandise, and did
not tender the purchase price of the goods contracted for, or
offer to carry out the contracts, there was not a breach of
contract by the seller in canceling the order and selling the
goods to other parties.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

MAY 21, 1919.

THIS is a suit in equity, to establish a claim in favor
of plaintiff in the receivership of the Iowa Mercantile Com-
pany, an insolvent corporation. There was a judgment up-

on a counterclaim interposed by the receiver for damages for the alleged breach of certain contracts for merchandise sold to the corporation, and plaintiff appeals.—*Reversed and remanded.*

*Trewin, Simmons & Trewin,* for appellant.

*Crissman & Linville* and *Barnes, Chamberlain & Hanzlik,* for appellee.

STEVENS, J.—During March and April, 1916, the Iowa Mercantile Company, a corporation conducting a mercantile business at Monticello and Cedar Rapids, Iowa, gave written orders to Sprague, Warner & Company, appellants herein, for merchandise for future delivery. The merchandise ordered consisted largely of canned goods, and various dates for the delivery thereof were specified. On September 7th, and before any of the merchandise was delivered, the Mercantile Company became insolvent, and K. T. Lamb was appointed receiver of its affairs and took immediate charge thereof, and, under the order of court, conducted its business for a period of 30 days. At the expiration of said time, the court ordered the receiver to sell the property and close up the business. This was promptly done, and on October 12th, a sale thereof was consummated to Philip Leibsohn.

On October 11th, J. D. Miller, general counsel for plaintiff, and an officer thereof, had a conversation with the receiver over the telephone from Chicago, concerning which he testified that he asked the receiver whether he was in a position to accept and pay for the goods ordered, and that the receiver replied that he was closing out the business and would not want the goods, but declined to write a letter suggested by Miller, canceling the order. On the following day, Miller went to Cedar Rapids, and had an interview with the receiver. The evidence as to what was said by the respective parties upon this occasion is some-

what at variance, and will be later referred to more in detail.

On October 16, 1916, appellant filed a petition in the office of the clerk of the district court of Linn County, where the receivership was pending, claiming that the Iowa Mercantile Company was indebted to it for goods sold and delivered prior to the appointment of the receiver, and prayed an order for the allowance and payment thereof. The receiver answered, admitting plaintiff's claim, subject to a counterclaim, which he interposed for damages. The case was tried in equity, resulting in a judgment against the plaintiff on the counterclaim for $5,987.17, and costs of suit.

Counsel agree that the contracts for the goods were executory, and that the receiver was not bound to carry out the same, but that he had a reasonable time, after his appointment, within which to elect whether or not he would, with the approval of the court, do so. It is also conceded by counsel for appellee that plaintiff was not bound to deliver the goods upon the terms of the original contract, which did not require payment at time of delivery, and that, if the receiver desired to carry out the contracts, he was required to tender the purchase price at the place of delivery. It is further conceded that this was not done. Defendant's counterclaim is not, therefore, based upon the failure or refusal of plaintiff to deliver the goods upon tender of the purchase price at the agreed place of delivery, but upon its alleged breach of the contract by the unequivocal revocation thereof and refusal to carry out the same. The burden, therefore, rested upon the defendant to establish such alleged breach by the plaintiff.

As before stated, the assets of the insolvent were sold under an order of court on October 12th, and the receiver withdrew from the further conduct or management of the business. The receiver testified that he first learned of the

orders in question on October 11th, from Mr. Miller, which was the occasion for the conversation referred to, over the long distance telephone. Appellant claims, however, that, about two weeks after the receiver was appointed, its traveling salesman, who sold most of the goods covered by the orders in question, visited Cedar Rapids, and had an interview with the receiver regarding the delivery thereof. This salesman was called as a witness for plaintiff, and testified that the receiver then told him that the affairs of the company were in bad shape; that it was losing money, and that he could not receive the goods; that he thereupon went to Chicago, and informed Mr. Miller of that fact. The receiver denied absolutely having had a conversation with plaintiff's salesman. Miller testified that, while at Cedar Rapids, on October 12th, he presented a statement to the receiver, which was offered in evidence, and shows the aggregate amount covered by each separate order and by the combined orders; that he demanded payment for the goods ready therefor, and in which shipments were due; and that payment was declined by the receiver, who informed him that he was not in a position to take the goods, but asked time to consider the matter, stating that he thought he could find a purchaser therefor; but that he refused to grant him time for that purpose, and stated that the orders would, therefore, be canceled, and plaintiff would seek a market for them elsewhere; that, during the time he was at the store, the receiver left the room, and, upon his return, stated that he had just closed a deal disposing of the whole business. Both parties agree, however, that Miller stated that plaintiff was ready and willing to ship the goods, upon payment of the stipulated price. Shortly thereafter, Liebsohn presented the following letter, bearing date October 16th, and addressed to Sprague, Warner & Company, Chicago, Illinois, to Mr. Miller:

"Gentlemen: This will introduce Mr. Philip Leibsohn,

to whom I have sold all the Iowa Mercantile Company stock, fixtures and future orders. Anything that you can do to favor Mr. Leibsohn while he is in Chicago, will be greatly appreciated. Yours very truly, Iowa Mercantile Company, K. T. Lamb, Receiver."

Leibsohn was not examined as a witness upon the trial, but Miller testified that plaintiff declined to ship the goods to him. Nothing further appears to have been done by the receiver, relative to these orders, until October 25th, when he wrote a letter to plaintiff, asking the shipment of 760 cases of canned goods, embraced in the order of March 3d, which were to be shipped as soon as assembled, 2,400 cases of canned goods on the order of March 17th, which were to be shipped on November 1st, and also the tea embraced in the order of March 30th. In this letter, the receiver asked that the bill of lading be forwarded, with sight draft attached. Plaintiff did not reply to this letter, nor were any of the goods referred to therein shipped. On November 25th following, the attorneys for the receiver wrote plaintiff, calling attention to its failure to answer the letter of the receiver, saying:

"We note that there are numerous other contracts of the Iowa Mercantile Company with you for goods to be delivered. Please advise us by return mail whether you intend to fulfill any of said orders, or do you repudiate them all?"

To this letter, plaintiff replied, stating that it was able and willing to make delivery of the merchandise, undertook to do so, and for that purpose sent a representative to Cedar Rapids, who notified the receiver to that effect; that the latter stated that, on account of faulty management, the financial affairs of the company were in a deplorable condition; that it was insolvent, and creditors would receive a small portion of their claims only; that he could not receive and pay for the goods; that a sale had

been concluded of the assets, and the affairs of the company were being wound up; and that it had discontinued business; and that, thereupon, the orders were canceled, and the goods sold to other parties.

Concerning the letter of October 16th, introducing Leibsohn to plaintiff, the receiver testified that he had sold future orders to Leibsohn upon condition that he could obtain delivery of the goods, and that Leibsohn had agreed to pay him $2,000 for the orders. As indicated, at the time of the correspondence between the receiver, his attorneys, and plaintiff, the business, under the order of court, had been sold out, and the receiver held the proceeds for distribution among the creditors of the mercantile company, under the order and direction of the court. It is not claimed that the orders in question were called to the attention of the court, prior to the filing of plaintiff's claim, or that the receiver was authorized thereby to adopt and carry out the contracts, or to advance any portion of the money in his hands to the payment of merchandise, nor did the receiver at any time inform plaintiff of his election to adopt and perform the contracts, nor was the agreed purchase price offered or tendered to plaintiff at the place of delivery.

It is, however, urged by counsel for appellee that the court authorized and directed him to file the counterclaim herein, thereby specifically ratifying and affirming the action of the receiver; that such approval and ratification relates back, and is equivalent to a prior authorization. No doubt, the receiver may exercise "sound discretion in many matters relating to the management and care of the property in his custody, subject to the subsequent approval of the court, which will be given when the officer has acted in good faith, and what he has done appears to have been beneficial to the parties interested."

1. RECEIVERS: administration of estate: discretion: approval by court.

*State Cent. Sav. Bank v. Ball-Bearing Chain Co.*, 118 Iowa 698. But an order appointing a receiver is ordinarily primarily for the purpose of preserving the property of an insolvent, to the end that it may not be dissipated by the owner, but so handled that it may ultimately be distributed among the parties entitled thereto. *Home Sav. & Tr. Co. v. District Court*, 121 Iowa 1.

The receiver, who acts under the discretion of the court, at no time sought its authority to adopt or carry out the contracts with plaintiff, nor were the negotiations shown in evidence reported to the court, until after plaintiff had filed its claim for allowance. He evidently knew that he had no right to use the funds derived from the sale of the business of the Mercantile Company in the payment of merchandise after the business had been closed out under the order and direction of the court, and while he was simply holding the funds for distribution among the creditors as the court should order. The maneuvering of the receiver was apparently directed rather to the purpose of placing plaintiff in default than to the carrying out of the contracts. He must have known that plaintiff was not legally bound to ship the goods, even though shipment was long past due, upon the mere request to forward bill of lading with sight draft attached, and that it was not placed in default by failing to respond to this request.

The Mercantile Company was completely disabled from carrying out the contract, by the appointment of a receiver, with whom it was optional whether he would, within a reasonable time, elect to carry out the contracts, or, under the authority of the court, treat the same as at an end. Plaintiff, in apparent good faith, on October 12th tendered performance of the contracts; and the evidence, without dispute, shows that the receiver, instead of electing to accept the

goods, asked for time in which to ascertain whether he could dispose of the orders to some other person.

Plaintiff was not bound in any way to recognize Leibsohn, to whom defendant gave the letter of introduction to plaintiff, as its debtor, or to deliver the goods to him; hence, the refusal of plaintiff to do so, or to ship the same to defendant upon the terms named in his letter of October 31st, did not amount to an unequivocal renunciation of the contract. The letter written to plaintiff by the attorneys for the receiver under date of November 25th did not inform it that the receiver elected and desired to carry out the contracts, nor did it contain a tender or offer to do so, but inquired only whether plaintiff intended to "fulfill any of the orders or to repudiate them all." Up to this time, the receiver apparently was in doubt, or did not know whether plaintiff would ship the goods upon a proper tender and offer to pay therefor, or whether the contracts had been renounced by it. Certainly, he knew of no unequivocal renunciation thereof, or refusal to perform the same, or the letters of October 31st and November 25th would hardly have been written.

The rule is well settled that if, before time of performance, one party to a contract absolutely repudiates it, and unequivocally refuses to perform the same, the other party may treat such repudiation as a breach thereof, and sue for damages. *Pardoe v. Jones,* 161 Iowa 426; *Quarton v. American Law Book Co.,* 143 Iowa 517.

2. CONTRACTS: breach of contract: repudiation.

The reply of plaintiff to the letter of November 25th was not a renunciation of the contract or an unequivocal refusal to perform the same, but, on the contrary, informed defendant that, at the time of Miller's visit to Cedar Rapids, plaintiff was ready, able, and willing to carry out the contracts upon payment of the purchase price for the

3. RECEIVERS: administration of estate: insolvency: contracts.

goods ready for shipment, and that it had sold the goods to other parties, after the receiver had stated that he was closing out the business, and could not receive the same and had asked for time in which to ascertain whether he could dispose of the orders to some other person. Both the salesman and Miller testified that the receiver told them he could not receive and pay for the goods, as the business of the corporation was in bad condition; and, according to the testimony of the latter, he sold the stocks and closed out the business of the mercantile company the day after he learned of the existence of the contracts. No act of the receiver amounted to a tender or offer upon his part to carry out the contracts. Plaintiff had a right to decline to deliver the goods to the receiver without payment, whose duty it was, within a reasonable time after his appointment, if he desired to adopt the contracts, to inform the plaintiff of his election to do so. Plaintiff could not be required to hold the goods for an unreasonable length of time, awaiting the decision of the receiver to elect to carry out the contracts. By tender of payment, coupled with a demand for the delivery of the goods, plaintiff would have been compelled either to ship the goods or become liable for the payment of damages. The receiver took none of the steps necessary to carry out the contracts. He did not report the same to the court, nor ask its authority to adopt and carry out the same. He was never authorized to use any part of the funds in his hands in payment of the goods, and the subsequent approval of the court did not relieve him of his duty to elect, within a reasonable time, to carry out the contract and tender payment and offer to perform the same at the agreed place of delivery.

We are unable, therefore, to concur in the conclusion of the trial court. In our opinion, there was never any unequivocal renunciation or breach of the contract by plain-

tiffs. Other questions are argued by counsel, but the conclusion announced above disposes of the case, and a discussion thereof is, therefore, unnecessary. We reach the conclusion that the judgment in favor of the defendant upon the counterclaim must be and is reversed, and the cause is remanded to the district court, with directions that the proper order allowing the claim of plaintiff be entered.— *Reversed and remanded.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.