FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. FRANK HANLON et al., Appellees.

No. 43846.

MAY 4, 1937.

H. E. Narey and Cornwall & Cornwall, for appellant.

J. W. Morse, for appellees Frank Hanlon and Minnie Hanlon.

SAGER, J.—The decision of this cause turns upon the question whether an agreement was reached between the plaintiff and Frank Hanlon for the settlement of Hanlon's indebtedness to the plaintiff. Other parties are made defendants but need not be considered in the further discussion hereof.

No unfamiliar propositions of law are involved, and since this opinion will establish no new precedent an extended analysis of the facts will be neither necessary nor desirable, and we will not attempt it.

Plaintiff held defendant's note for $14,500 payable under an amortization plan, which note was secured by a mortgage. All installments were paid to May 1, 1932. Defendant finding it difficult to make further payments negotiations were had between the parties which resulted in an interchange of letters looking to a settlement.

On December 24, 1934, plaintiff's representative wrote a letter to Hanlon agreeing to accept $12,500 in full of the claim with certain stipulations. Among these stipulations were the requirements that the amount stated be paid on or before February 15, 1935, in cash, or Federal Farm Loan Corporation bonds; the assignment of a 1935 lease "which we can carry on with you for a time in the event that you are not able to meet our figure." In this letter plaintiff expressed a willingness to apply the 1934

rent. In addition to the payment of the $12,500, Hanlon was "to take care of unpaid 1932, 1933 and the first half of the 1934 taxes." The letter concludes with the statement that this proposition would be outstanding for fifteen days, but if not accepted within that period would be withdrawn.

In response to this letter, Hanlon wrote:

"I agree to accept your settlement figure of $12,500 in full liquidation of your mortgage and taxes you have already advanced, subject to my being able to complete the F. L. B. and F. L. C. loans, said funds to be in your hands by February 15, 1935, and in the event they are not in your hands by that time I agree to pay you interest at the same rate your present mortgage draws on the $12,500.00 from February 15, 1935, until such time the funds to reach your hands."

This letter goes on to say that Hanlon had entered into a lease of the mortgaged premises upon stated terms and that he had "assigned same to your bank and deposited it with C. H. Petersen * * * with the understanding that Mr. Petersen is to turn the assigned lease over to your bank or your fieldman in the event this settlement figure is not met by the undersigned."

This letter contains other matter not necessary now to be considered.

Hanlon's letter brought this response from the plaintiff, under date of January 7, 1935:

"We have at hand your acceptance of our cash settlement offer and are today forwarding the abstract of title to Mr. C. H. Petersen, Sec.-Treas., Spencer, Iowa, together with an executed agreement to accept payment in bonds. We will expect a remittance representing proceeds of 1934 rents promptly and in no event later than January 31, 1935."

Following this, plaintiff proceeded toward the performance of the undertakings of these letters, forwarding the abstract as stated; and the defendant undertook to perform his part as follows: he signed a new mortgage to the Federal Land Bank of Omaha, and for a commissioner's loan, which mortgages were recorded, and at the time of the trial were unsatisfied. He paid taxes for 1932, 1933, and 1934, and raised money on his personal property by giving a chattel mortgage, which money he paid to Petersen for the plaintiff, who still held the same at the time of

the trial. The 1934 rent in the sum of $564.96 was paid to plaintiff, who still retains it.

Various causes of delay intervened to prevent an immediate closing of the terms of settlement, though so far as the record discloses Hanlon was diligent throughout.

On February 15, 1935, plaintiff wrote to Petersen acknowledging receipt of the 1934 rents, saying: "We will credit this $564.96 on the refinancing settlement, if and when completed, which will make a balance of $11,935.04, due us as of February 15, and in view of the fact that a new application was required, we are extending the settlement date for 60 days, interest at $5\frac{1}{4}\%$ to be paid on the $11,935.04 from February 15."

On April 12, plaintiff wrote Petersen: "We will appreciate your advice as to the commitments received on the new application, and as to the status of Federal loans."

On the same day Petersen wrote to plaintiff: "I have your letter of February 15th, stating that your bank will accept $11,935.04 in full payment of the above loan and this to be paid by February 15th or $5\frac{1}{4}\%$ interest on this amount until paid."

The letter continues, to advise plaintiff that "it may be some time before we get this loan closed and this will mean quite an additional amount of interest, which I am afraid Mr. Hanlon will be unable to pay."

After setting forth the amount of taxes, loan, and abstract fees which Hanlon would have to pay, Petersen continues: "From this you will notice that Mr. Hanlon will be $273.00 short if he has to pay interest on your loan from February 15th to May 15th, and we would kindly ask you to waive this interest if possible."

The next day, April 13, 1935, Petersen again wrote plaintiff stating his understanding of their last proposal, setting forth the various amounts that would be left after making certain payments, and indicating that he was holding the proceeds of the loan made by Hanlon upon his personal property; and indicating, too, that Hanlon would have some difficulty in meeting the total figures that were being required to meet the settlement. He concludes with this request: "I would, therefore kindly ask that your Bank waive the interest part from Feb. 15 to May 15, because I find that it will be impossible for Mr. Hanlon to raise this additional amount."

Plaintiff made no answer to either the letter of April 12 or of April 13.

On May 16, 1935, Petersen again wrote to the plaintiff, enclosing various remittances, saying: "Kindly have the orders for shipment of bonds filled in designating the bank or trust company to which the bonds are to be shipped, and selecting the number of pieces and denominations desired. After endorsing the same by proper authority, you will kindly forward the order to the Federal Reserve Bank of Kansas City, Missouri, and deliver to us the cancelled papers and the release of the mortgage as recorded in Book 21, page 31, of the records of Dickinson County, Iowa."

On June 6, 1935, plaintiff's representative wrote:

"Dear Mr. Petersen:

"This will acknowledge receipt of your letter of May 18, 1935 with settlement remittance enclosed, which we return herewith, being:

"1. Order No. D-00125 and C-00127 on The Federal Reserve Bank of Kansas City for FFMC 2¾% bonds in the face amount of $4100 and $7200 respectively;

"2. The Federal Land Bank's checks D-32532 and No. 133987 in the amount of $78.07 and $61.50.

"3. Your check in the amount of $300.00—No. 1885.

"Following receipt of your letter of May 18, 1935, this situation was again submitted to our Executive Committee, but the Directors are unwilling to reinstate our previous settlement proposition.

"Kindly forward to this office the 1935 lease which has been assigned to us as additional security, and provided Mr. Hanlon pays the taxes to date, we are willing to carry on with him for a time, but otherwise, it is our intention to proceed with a foreclosure action."

Following the expressed intention of the plaintiff, it filed its petition in foreclosure against the defendant Hanlon on August 6, 1935, and it was against this petition that Hanlon entered his plea of settlement.

From the foregoing and other facts shown by the record but which do not appear in this opinion, the trial court found for the defendant and entered its decree giving to Hanlon what the court considered to be a reasonable time to carry out the terms

of settlement, which decree by its terms made full and ample provisions for the protection of plaintiff's rights.

Plaintiff, being dissatisfied, prosecutes this appeal.

We think the trial court was right and its decree manifestly equitable in its disposal of the questions presented in this case.

During the long period of time during which efforts were being made to carry out the terms of the proposed settlement, the parties hereto were fully aware of the delays and difficulties which might and did beset them in arriving at a final determination of their efforts. At no time was there any suggestion that time was regarded as the essence of the contract. On the contrary, there seems to have been a mutual effort and accommodation with the hope and purpose of getting the matter straightened out without the necessity of foreclosure.

In an early case (Mathews v. Gilliss, 1 Iowa (Clarke) 242, at page 254), we expressed our views with reference to the question as to whether time was the essence of a contract or not in the following language:

"That it was competent for these parties to affix their own conditions, as to making time and other matters of the essence of the contract, cannot be controverted. And if they have so done, we shall not hesitate to enforce it, and shall not interfere to make a new contract for them. Unless, however, they have expressly treated time as of the essence of the contract, or unless it necessarily follows from the nature and circumstances thereof, it is not to be so deemed in equity. This general proposition, is so well settled as to scarcely need authority or argument to sustain it. See, however, Story's Eq. Jur. 776, Hepburn v. Ault, 5 Cranch, 262 [3 L. Ed. 96]; Brashier v. Gratz et al., 6 Wheat. 528 [5 L. Ed. 322]; Pratt and others v. Carroll, 8 Cranch, 471 [3 L. Ed. 627]; Mitford Eq. Jur. 461, 462."

A further statement appearing in this opinion, at page 254, may well be applied to the case before us:

"We do not think that time has been made expressly of the essence of this contract, nor have the parties so treated it."

This opinion, announced in 1855, has been the law of this state ever since. Moreover, Justice Wright in his pronouncement seems to have anticipated by many years the modern trend of authority, which has been stated as follows:

446

"The tendency of the later authorities at law as well as in equity is to regard the question as one of construction, to be determined by the intent of the parties, and to hold that time is not ordinarily of the essence of the contract unless made so by express stipulation, or unless there is something connected with the purpose of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract must be performed at or within the time named." 13 Corpus Juris, sec. 783, page 687.

A reading of the record in this case discloses nothing which would warrant us in holding either that there was any express stipulation that time was the essence of the contract, or that the parties so understood it. Neither do we find anything in the circumstances which "makes it apparent that the parties intended that the contract must be performed at or within the time named."

It follows that the decree of the trial court is affirmed, but since this appeal in this case has carried it long past the time set by the trial court for the performance on the part of the defendant of his undertakings, we are under the necessity of remanding the case for such further orders with reference to fixing time for performance as the court may find reasonable, and for the making of such further orders and decrees as may be found by the lower court requisite and equitable in the enforcement of its decree.

To that end, the case is affirmed and remanded for further orders and decrees.—Affirmed and remanded for further orders and decrees.

RICHARDS, C. J., and KINTZINGER, MITCHELL, ANDERSON, DONEGAN, PARSONS, and STIGER, JJ., concur.