**Carroll A. LANE and Mildred L. Lane, Appellees,**

v.

**CRESCENT BEACH LODGE & RESORT, INC., Appellant.**

**No. 55118.**

Supreme Court of Iowa.

June 29, 1972.

Prichard, Hanson, Doran & Bormann, Emmetsburg, for appellant.

Alden D. Avery, Spencer, and Robert S. Bruner, Carroll, for appellees.

McCORMICK, Justice.

Defendant Crescent Beach Lodge & Resort, Inc., appeals from a decree quieting title in and giving possession of Lake Okoboji resort property to plaintiffs based upon forfeiture of an installment purchase contract. We reverse.

Our review is de novo. We give weight to trial court fact findings but are not bound by them. Rule 344(f) (7), Rules of Civil Procedure.

On February 8, 1967, plaintiffs contracted in writing to sell real estate and person-

al property of their commercial vacation resort on Lake Okoboji to defendant for $500,000. The contract required $60,000 to be paid prior to March 1, 1967, possession and $25,000 to be paid by five $5000 six percent notes maturing in consecutive years starting March 1, 1968. The balance was to be paid in annual installments with the entire price to be paid by March 1, 1989.

The only other relevant contract provisions concern insurance and default:

"Sellers agree to carry existing insurance until date of possession; thereafter, until final settlement. Buyer agrees to keep the improvements upon said premises insured against loss by fire, tornado and extended coverage for a sum not less than the balance owing under this contract, with insurance payable to Sellers and Buyer as their interests may appear, and to deliver policies therefor to Sellers. * * *

    *     *     *     *     *     *

"If Buyer fails to perform this agreement in any respect, time being of the essence of this agreement, then Sellers may forfeit this contract as provided by Chapter 656 of the Iowa Code, and all payments made and improvements made on said premises shall be forfeited, it being understood, however, that the Buyer shall have ninety days after said notice of forfeiture to correct any deficiencies or delinquencies; or Sellers may declare the full balance owing due and payable and proceed by suit at law or in equity to foreclose this contract, in which event Buyer agrees to pay costs and attorney fees and any other expense incurred by Sellers."

The parties agree the corporation met its contract obligations prior to October 1969. All payments including $135,250 in reduction of principal had been made. In addition close to $50,000 in improvements had been added. There was a tornado loss in 1968 resulting in $34,000 insurance recovery used to repair damage.

The five casualty insurance policies on the property were underwritten by the Reimers Insurance Agency, a corporation, of Spencer. Coverage was pooled because of the category of risk involved. They were three-year policies with annual premiums due in advance on four of them each October 15 and the fifth on November 3. Premium notices were sent out 30 days in advance of due dates with monthly statements thereafter until payment. The broker could and did extend credit to defendant. The total of $6497 in premiums was not paid when billed in 1969.

Richard Reimers, owner of the Reimers agency, told Joseph C. West, defendant's president and resort manager, in December 1969 that defendant had to pay the premiums because he could not afford to remit to the insurers from his own pocket. Mr. West promised to make every effort to make at least partial payment and to get in touch with him soon. Mr. Reimers agreed to that. His agency borrowed from a bank and paid the insurers.

The insurers would not cancel the policies unless requested to do so by Mr. Reimers. He made no such request, had not even discussed it with Mr. West, nor was he then planning cancellation. The policies required ten-day written notice of cancellation to plaintiffs, defendant and plaintiffs' mortgagee.

On about January 12, 1970, Mr. Lane learned the premiums had not been paid from conversation with a member of the Reimers agency. He quickly confirmed this with Mr. Reimers, made no effort to contact defendant, and on about January 20, 1970, paid Mr. Reimers $3497 in cash, which on January 26, 1970, was credited to defendant's premium account. He also gave a $3000 90-day six percent note to Mr. Reimers individually. The note was paid shortly after due and proceeds credited to the premium account on May 12, 1970.

Mr. West had held a stockholders' meeting in an unsuccessful effort to raise mon-

ey for the premiums. Sometime before January 20, 1970, he had told defendant's lawyer he could not pay it, and the lawyer told plaintiffs' lawyer the premium had not been paid and he might as well commence legal proceedings.

The record does not disclose whether this information reached Mr. Lane prior to his payment of the debt.

On January 22, 1970, plaintiffs caused a standard notice of forfeiture of real estate contract to be served on defendant alleging as its sole basis:

"The premium on the fire, tornado and extended coverage insurance which was due December 31, 1969, has not been paid. $6497.00"

During the forfeiture period defendant made unsuccessful efforts to find a new buyer for the premises and on the last day tendered plaintiffs $3443.41 which was not accepted. When defendant held over after notice to quit, plaintiffs brought this action May 15, 1970, asking quiet title, possession, and other relief including receivership.

After hearing, receivership was ordered June 3, 1970. Mr. Lane was appointed receiver and defendant was enjoined not to interfere with his possession and control of the premises and business.

On June 8, 1970, plaintiffs caused a second notice of forfeiture to be served on defendant alleging as bases the nonpayment of the $6497 in insurance premiums, $4433.69 in taxes due April 1, 1970, $16,392.50 in principal and interest due March 1, 1970, and nonpayment of interest on the delinquencies.

Since all business assets were then in receivership, defendant had no means of curing any of the alleged defaults and did not do so.

The main case was tried September 18, 1970, with decree entered February 25, 1971, finding the contract properly forfeited under the January 22, 1970, notice, qui-

eting title in and granting possession to plaintiffs, and taxing costs to defendant.

I. The crucial question is whether the contract was breached by defendant's failure to pay the insurance premiums when due. If it was, forfeiture was properly carried out. If it was not, the first attempted forfeiture is void.

There is no dispute the premises were insured to the extent required by the contract at the time Mr. Lane stepped in and paid the premiums. The contract did not expressly obligate defendant to pay the insurance premiums when due. However plaintiffs argue it made time of the essence and failure to pay the premiums on time was failure to keep the premises insured within the meaning of the contract.

■ Plaintiffs have the burden of proving the existence of facts which entitle them to forfeiture under the terms of the contract. Tait v. Reid, 158 Iowa 466, 472, 139 N.W. 1101, 1103 (1913). Equity abhors forfeiture. Figge v. Clark, 174 N.W.2d 432, 434 (Iowa 1970); Babb's, Inc. v. Babb, 169 N.W.2d 211, 213 (Iowa 1969); Collins v. Isaacson, 261 Iowa 1236, 1242, 158 N.W.2d 14, 17 (1968), and citations.

We have also said, "Forfeitures are not favored in law, and courts will so construe contracts as to avoid them, if possible." White v. Miller, 132 Iowa 144, 149, 109 N.W. 465, 467 (1906). See also Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699, 703 (1945); Reiger v. Turley, 151 Iowa 491, 501, 131 N.W. 866, 870 (1911).

In this case plaintiffs ask extension of contract terms by implication. They base their forfeiture claim upon reading into the contract a requirement that insurance premiums be paid when due with time of the essence. However,

"It is well settled that forfeitures by implication or by construction, not compelled by express requirements, are regarded with disfavor, and that contracts

involving a forfeiture cannot be extended beyond the strict and literal meaning of the words used. Since forfeitures are not favored * * *, provisions for forfeitures are to receive, where the intent is doubtful, a strict construction against those for whose benefit they are introduced. Courts are reluctant to declare and enforce a forfeiture if by reasonable construction it can be avoided. Forfeitures are enforced only where there is the clearest evidence that that was what was meant by the stipulation of the parties * * *." 17 Am.Jur.2d Contracts § 500, pages 975–976.

It is true a contract contains not only express words but also "such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made." 3 Corbin on Contracts, § 561, page 277. See also Matthys v. Donelson, 179 Iowa 1111, 1115, 160 N.W. 944, 945 (1917); 7 Williston on Contracts, § 922, pages 662–3 (3d ed.).

With these principles in mind, it seems inescapable that defendant was contractually obliged to purchase the insurance it promised to maintain. Cf. Kansas City Structural S. Co. v. Utilities Bldg. Corp., 339 Mo. 68, 95 S.W.2d 1176 (1936). Presumably the insurance would have a price which defendant was bound to pay.

But was time of such payment of the essence in the real estate contract? We cannot stretch the implication that far. The timeliness of premium payments would not necessarily affect the covenant to keep the improvements insured. In addition, the timing of such payments was clearly left open to whatever bargain might be negotiated between defendant and the insurer. There is no implied contractual term prohibiting defendant from accepting credit in purchasing insurance. Credit was extended here. Time was not of the essence in the insurance contracts, and there is no basis for saying the real estate contract made it so.

■ Further, no time for premium payment was specified in the real estate contract either expressly or by implication. The general statement that time is of the essence does not automatically make time of the essence of every promise in it or implied from it. 3A Corbin on Contracts, § 715, pages 363–4, ("It would affect only those performances for which a definite time is specified.") See also First Trust Joint Stock Land Bank of Chicago v. Hanlon, 223 Iowa 440, 445, 273 N.W. 114, 117 (1937); 6 Williston on Contracts, § 846 (3d ed.).

In this case cancellation of the insurance had not even been discussed, much less threatened, at the time Mr. Lane paid the premiums. We do not fault him for doing so. He had an interest to protect. However, the issue is whether he can use this as a basis for invoking forfeiture rather than some less drastic remedy. For example, he had a clear right to indemnity from defendant for the amount paid. Restatement of Restitution, § 79.

We also cannot speculate whether by reason of defendant's financial plight the premiums would have remained unpaid causing cancellation of the policies. The situation did not arise.

■ Defendant's failure to make timely payment of insurance premiums was not default of the real estate contract justifying forfeiture.

■ II. Plaintiffs also argue defendant's manifestation of inability to pay the premiums was evidence of default. This would be so only if anticipatory breach was thereby demonstrated. Anticipatory breach requires a definite and unequivocal repudiation of the contract. Sprague, Warner & Co. v. Iowa Mercantile Co., 186 Iowa 488, 172 N.W. 637 (1919); 4 Corbin on Contracts, §§ 959, 973. It is committed before the time for performance and "is the outcome of words or acts evincing an intention to refuse performance in the future." 17 Am.Jur.2d Contracts § 448,

pages 910–911. It is not established "by a negative attitude or one which indicates more negotiations are sought or that the party may finally perform." 17 Am.Jur.2d Contracts § 448, page 912. Cf. Miller v. McConnell, 179 Iowa 377, 157 N.W. 943 (1916).

■ We do not find in this case any words or conduct clearly amounting to repudiation of the contract. The words and conduct of Mr. West regarding inability to pay the premiums were in a context of continuing effort and desire to do so. Cf. 4 Corbin on Contracts, § 974.

Defendant did not anticipatorily breach the contract.

We hold that at the time of service of the January 22, 1970, notice of forfeiture defendant was not in default under the contract. The purported forfeiture based upon that notice is void.

■ III. The record does not show plaintiffs relied at trial upon the second notice of forfeiture. It was served when the property involved had been put in receivership beyond defendant's management and control under color of the first notice of forfeiture. The receivership was grounded upon a void proceeding. The resort business is seasonal and the season was just starting. Defendant's hope of paying the delinquencies from the profits of a good year was thus aborted by the receivership.

Equity will not permit forfeiture under such circumstances because the court-imposed receivership effectively disabled defendant from attempting to cure the defaults alleged.

IV. Defendant's other assigned errors need not be discussed. We recognize it will be necessary for an accounting to adjust the rights of the parties upon remand and this will be a burdensome procedure. We cannot predict whether defendant's victory will be short-lived. However, the case must be reversed and remanded for accounting proceedings consistent with this decision to put the parties in the positions they would be but for the attempted forfeitures.

The trial court shall schedule restoration of possession of the property and management of the business to defendant in orderly manner. Any new attempted forfeiture is stayed until final decree settling the accounting. Until such final decree defendant shall account to the trial court for receipts and disbursements of the business and net proceeds therefrom shall be first applied to contract obligations. General equitable principles and procedures applicable in accounting actions will be used here. See 1 Am.Jur.2d Accounts and Accounting § 63; 1 C.J.S. Accounting §§ 22, 41–45; cf. McGaffee v. McGaffee, 244 Iowa 879, 56 N.W.2d 36 (1952), 244 Iowa 890, 58 N.W.2d 357 (1953) (supplemental opinion on rehearing).

Reversed and remanded with directions.

All Justices concur.