# IN THE COURT OF APPEALS OF IOWA

No. 18-0173
Filed March 20, 2019

**TIM KRUSE and RUSSELL BRIES d/b/a KRUSE "N" BRIES CONSTRUCTION,**
  Plaintiffs-Appellants,

**vs.**

**DON KRUMWIEDE and MOLLY KRUMWIEDE,**
  Defendants-Appellees.

_____

Appeal from the Iowa District Court for Allamakee County, John J. Bauercamper, Judge.

The plaintiffs appeal the district court's ruling that they failed to prove the defendants breached their written contract or an implied contract. **AFFIRMED.**

Jeffrey E. Clements, West Union, for appellants.

Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, PLC, Decorah, for appellees.

Considered by Potterfield, P.J., Doyle, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**POTTERFIELD, Presiding Judge.**

The plaintiffs, Tim Kruse and Russell Bries, who do business as Kruse "N" Bries Contruction, were hired by Don and Molly Krumwiede to build and finish the Krumwiede's new home. The plaintiffs filed suit against the Krumwiedes for breach of contract and promissory estoppel or unjust enrichment, maintaining they performed construction services pursuant to written and verbal contracts and the Krumwiedes failed to compensate them fully. The district court denied the plaintiffs' claim,[1] finding they failed to prove their case. On appeal, the plaintiffs claim the district court "was incorrect in the conclusions of law necessary for plaintiffs to establish their cause of action."

**I. Background Facts and Proceedings.**

The original Krumwiede home was totally destroyed by fire in September 2012. The home was insured for replacement cost, and the insurance policy also included coverage for up to one year of living expenses while the home was rebuilt. The Krumwiedes contacted Kruse "N" Bries Construction to build a new home on their acreage, relying on the insurance proceeds to finance the construction, with the cooperation of their mortgage lender.

Later, the Krumwiedes met Kruse and showed him a picture of a home called the "Woodsman," which they had obtained from advertising materials distributed by Menards. The Krumwiedes discussed their interest in having a home similar in appearance to that home built; they did not ask that the materials

---

[1] The Krumwiedes filed countersuits against the Kruse and Bries, claiming a breach of duty of implied warranty of workmanlike construction and defective construction. The district court denied their claims, and the Krumwiedes did not appeal that decision.

and plans for this particular home be obtained from Menards or that this specific "Woodsman" home be built.

After meeting with the Krumwiedes, Kruse obtained the materials list for the "Woodsman" model home from a nearby Menards store. It is disputed as to when Kruse actually purchased the plans for the Woodsman home from Menards, but at some point Kruse "N" Bries Construction did purchase the detailed blueprints from Menards. Kruse did not rely on the materials list obtained from Menards. Instead, he prepared his own materials list based upon the suppliers he customarily used and the home and features he proposed to provide. He then prepared a preliminary document and showed it to the Krumwiedes. The preliminary document, dated September 26, 2012, indicated a price of $175,000 to construct and finish the home.

Kruse revised that first document and presented a final five-page version to the Krumwiedes, which was dated October 1, 2012. Each of the five pages contained four columns, called description, quantity, price, and amount. The description column on each page included a list of items commonly associated with the building of a home, including, but not limited to, these items: cement and digging, footings, walls, floors, electrical, plumbing and heating, building materials, siding. Nothing was listed in the other three columns opposite these items. At the bottom of the last page, a line called "Total Materials and Labor" showed $175,000 in both the price and amount column. The $175,000 was crossed out and replaced, in handwritten numbers, with $190,000.00 for both the price and amount column. Under the total, typewritten in all capital letters and

heavy bold face type, it stated, "This is a bid not an estimate. 50% downpayment [sic] required. We are registered in State of Iowa as general contract[o]rs."

The document did not state that it was a contract between one party as "builder" and the other as "owner" for the construction of a home. It included no other terms of payment or anything in addition to what was included in the bold face type. It was not signed by either party. No completion date was listed. No description of the plans or specifications were included. There was no reference to the Menards "Woodsman" model. The only indication of what was to be done was what one could imply from the type of products to be provided as listed in the description columns. Additionally, the document did not include a procedure to follow for the addition or subtraction of any features or materials from the house project nor the effect on the stated price for the house due to changes.

Both parties acknowledged in their testimony that they had an agreement to build a house for $190,000.00 and it was to look like the Menard's picture of a "Woodsman" model home.

Construction on the house began in mid-November of 2012. The Krumwiedes made a down payment of $92,000.00 before work began.

In testimony, Kruse outlined what he described were changes to the original plan and extra items or upgrades that were added to the project at the request of the Krumwiedes after his initial bid was accepted and construction began. He asserted that it was understood that there would be additional costs because of the changes. None of these changes were documented by written plans or a change order. Molly Krumwiede testified there were no changes made after the date they accepted the bid for $190,000 and that Kruse was told all of

the things they wanted that were different than the Woodsman design before they hired Kruse "N" Bries Construction by accepting the $190,000 bid.

The ultimate changes to the Woodsman design were substantial and significant, including changing the garage from a one stall to two stalls, which then enlarged the living space above the garage, and adding a walk-out basement.

In addition to the down payment of $92,000, throughout the construction process, Kruse asked for additional payments from the Krumwiedes totaling $76,000. The Krumwiedes made the additional payments, and ultimately paid Kruse "N" Bries Construction $168,000.

Then, in August 2013, while construction was still ongoing, Kruse requested another payment. He did not provide a written bill or invoice detailing for what items the funds were needed. Disputes arose regarding the requests for additional payments. The work was not completed and the one-year period of living-expenses reimbursement provided to the Krumwiedes by their insurance company was running out. Additionally, the Krumwiedes's mortgage lender was concerned about being asked to disburse more funds without any documentation to support the requests. The Krumwiedes refused to pay additional funds before the home was finished. As a result of the disagreement, Kruse "N" Bries Construction quit working on the project.

The Krumwiedes received their first bill from Kruse "N" Bries, which included costs for changes Kruse maintained they made after construction began, in September 2013. The bill showed that "all receipts" for the home totaled $246,500. Based on what the Krumwiedes had already paid and

subtracting $12,600 for cabinets, Kruse "N" Bries Construction demanded payment of $69,500 within ten days. The Krumwiedes did not pay the bill.

The Krumwiedes ultimately hired other contractors to complete work on the house. The total cost of completing the construction of the house to their satisfaction was about $250,000, including the sums previously paid to Kruse "N" Bries.

After the home was finished, in spring 2014, Don Krumwiede obtained a job in another state and the Krumwiedes decided to move. The house was listed for sale and it sold, together with only about half of the acreage and other existing outbuildings, for the sum of $330,000.00.

Kruse and Bries filed suit on December 1, 2014, alleging breach of a construction contract and requesting compensation. A timely answer was filed resisting the claims and asserting a counterclaim for damages for alleged breach of contract.

At trial, Kruse testified they were seeking $96,815.30 in damages.

The district court denied the plaintiffs' claims and the defendants' counterclaims. Only Kruse and Bries appeal.

## II. Standard of Review.

We review a breach-of-contract claim tried at law to the district court for correction of errors at law. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). "We will reverse a district court's judgment if we find the court has applied erroneous rules of law, which materially affected its decision." *Id.* "In contrast, the district court's findings of fact are binding on us if they are supported by substantial evidence." *Id.*

**III. Discussion.**

**A. Breach of Contract.**

In a breach-of-contract claim, the plaintiff has the burden to prove all of the following:

> (1) the existence of a contract,
> (2) the terms and conditions of the contract,
> (3) that the plaintiff performed all the terms and conditions required under the contract,
> (4) that the defendant breached the contract in some particular way, and
> (5) the plaintiff has suffered damages as a result of defendant's breach

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (listing elements for claim of breach of contract); *see also Holliday v. Rain and Hail L.L.C.*, 690 N.W.2d 59, 64 (Iowa 2004) ("The burden of proof on the plaintiffs was to prove a breach of contract by a preponderance of evidence.").

Here, the district court found that "[t]here was clearly an agreement to build a house for a certain price" but stated it was otherwise impossible for the court to determine "the exact terms of what was to be provided" "due to lack of details spelled out by the parties and their failure to both agree on the work to be done." On appeal, the plaintiffs take issue with this ruling, arguing these "are not the required legal conclusions to be determined to decide whether plaintiffs have proven their case." We disagree. We understand the district court's statement to mean the plaintiffs failed to prove the terms and conditions of the contract and, because the terms are unclear, to prove the defendants breached those terms. Moreover, we believe substantial evidence supports these conclusions.

Kruse and Bries contend the Krumwiedes breached the contract when they refused to make an additional payment when asked in August 2013. But we have no evidence of any agreement about when or how the Krumwiedes were supposed to make payments. Both the bid, which was submitted into evidence, and the testimony at trial were silent on any terms of a payment schedule.

Kruse and Bries also contend the Krumwiedes committed an anticipatory breach by indicating their refusal to pay Kruse and Bries more than $190,000. *See Lane v. Crescent Beach Lodge & Resort, Inc.*, 199 N.W.2d 78, 83 (Iowa 1972) ("Anticipatory breach requires a definite and unequivocal repudiation of the contract. It is committed before the time for performance and 'is the outcome of words or acts evincing an intention to refuse performance in the future.'" (citations omitted)). According to the plaintiffs, this is a breach because the original construction contract was for $190,000 and then the changes by the Krumwiedes resulted in additional costs, for which the Krumwiedes knew they were responsible. The problem is, as the district court stated, the original bid that was accepted is too vague to determine what Kruse and Bries promised to construct for $190,000. And Kruse's testimony about what constituted changes was questionable, at best. Three of the items Kruse identified as changes, which made up a large part of the additional $74,815.30 the plaintiffs were claiming—on top of the bid price—were the adding of septic, the change to a walk-out basement, and the enlargement from a one-stall garage to a two-stall garage. But both the septic and the walk-out basement were included on Kruse's September 26 bid of $175,000. Additionally, the building permit, which had to be

obtained before any construction began, lists the size of the garage as a two-stall garage.

The plaintiffs have not proved the existence of an agreement regarding a payment schedule, nor have they proved that the "changes" or "additions" they identify were not included in the $190,000 bid. Thus, we agree with the district court that Kruse and Bries have not established the Krumwiedes breached the contract.

### B. Breach of Implied Contract.

Kruse and Bries maintain the Krumwiedes breached an implied contract. But "[o]ne who pleads an express oral contract cannot ordinarily recover under an implied contract or quantum meirut." *Giese Const., Inc. v. Randa*, 524 N.W.2d 427, 431 (Iowa Ct. App. 1994). "An express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract." *Id.*

Moreover, "[t]he doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *State ex rel. Palmer v. Unisys. Corp.*, 637 N.W.2d 142, 154 (Iowa 2001). But Kruse and Bries did not prove that the terms of the original contract did not include the Krumwiedes's changes to the original Woodman design, so we cannot say the Krumwiedes received anything they were not entitled to receive under the contract. The plaintiffs were only paid $168,000 of the $190,000 contemplated by the contract, but it is undisputed the home was not finished when they quit

working on it, and the Krumweides were required to pay other parties additional sums to finish the work.

This claim fails.

**IV. Conclusion.**

Because Kruse and Bries did not meet their burden to prove the Krumwiedes breached the contract, and because a claim of breach of implied contract cannot coexist with a claimed breach of express contract on the same subject matter, we affirm the district court's denial of the plaintiffs' suit.

**AFFIRMED.**