# IN THE COURT OF APPEALS OF IOWA

No. 24-0259
Filed April 9, 2025

**MID IOWA REAL ESTATE, AUCTION & APPRAISAL,**
Plaintiff-Appellee,

**vs.**

**MICHAEL A. ERWIN, Individually and as Trustee, and ME-DE IRREVOCABLE LAND TRUST,**
Defendants-Appellants.
_____

Appeal from the Iowa District Court for Madison County, Stacy Ritchie, Judge.

A landowner appeals from the district court's determination that it breached a real estate auction contract. **AFFIRMED AND REMANDED WITH DIRECTIONS.**

Matthew D. Gardner of Gardner Law Firm, P.C., Urbandale, for appellant.

Michael W. Mahaffey of Mahaffey Law Office, P.C., Montezuma, for appellee.

Considered without oral argument by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Michael Erwin is the trustee of the ME-DE Irrevocable Land Trust, which owns 355 acres of farmland in southwest Iowa.  In April 2022, Erwin contacted Mid Iowa Real Estate, Auction & Appraisal about selling the land trust's farmland. Jeffrey Obrecht, the owner of Mid Iowa, prepared a sales proposal and met with Erwin in mid-April.  After reviewing the proposal, Erwin signed a real estate auction contract on behalf of the land trust, granting Mid Iowa the exclusive right to sell the farmland.  The auction was set for June 30, 2022.  But it never took place.

Mid Iowa sued Erwin and the land trust for breach of contract.[1]  At the bench trial, each party asserted the other cancelled the contract before the time for performance.  The district court found Obrecht was more credible than Erwin and awarded Mid Iowa $39,050 in damages and $5648.56 in attorney fees.  The land trust appeals, claiming the court erred in finding that it "definitively and unequivocally anticipatorily repudiated the contract."

The parties agree that our review of this breach-of-contract claim is for correction of errors at law.  *See Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023).  The district court's "findings of fact are binding on us if they are supported by substantial evidence."  *Id.* (citation omitted).  "When we review a finding for substantial evidence, we view the evidence in a light most favorable to the district court's judgment," asking whether "a reasonable mind would accept it as adequate."  *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 468 (Iowa 2010) (citation omitted).  Upon viewing the evidence in that

---

[1] Mid Iowa's petition also included a count for specific performance, but Mid Iowa did not pursue that claim at trial.

light, we conclude substantial evidence supports the district court's finding that the land trust, rather than Mid Iowa, "discontinued the auction," thereby repudiating the contract.

"Anticipatory breach requires a definite and unequivocal repudiation of the contract." *Lane v. Crescent Beach Lodge & Resort, Inc.*, 199 N.W.2d 78, 82 (Iowa 1972). "Normally, repudiation consists of a statement that the repudiating party cannot or will not perform." *Conrad Bros. v. John Deere Ins.*, 640 N.W.2d 231, 241 (Iowa 2001) (cleaned up); *see also Pavone v. Kirk*, 807 N.W.2d 828, 833 (Iowa 2011) ("A repudiation is accomplished by words or acts before the time of performance evidencing an intention to refuse to perform in the future."). "The statement must be sufficiently positive to be reasonably understood that the breach will actually occur." *Conrad Bros.*, 640 N.W.2d at 241 (cleaned up). Thus, there must be more than "a party's negative attitude, a party's attitude indicating more negotiations are sought, or that a party may finally perform." *Pavone*, 807 N.W.2d at 833.

On June 14, Erwin learned that Obrecht was scheduled to have surgery the week before the auction. He sent Jason Etnyre—a real estate agent with Mid Iowa who was helping with the auction—a text stating, "I think we need to discuss postponing the sale because it seems we are all to[o] busy right now and with Jeff's surgery coming up." Early the next morning, on June 15, Etnyre texted Erwin that Obrecht would call him. Obrecht, who had been brokering real estate auctions for more than forty years, was not worried about his surgery and planned to be present at the auction. But when Obrecht called Erwin that day, rather than discussing his upcoming surgery, they talked about an interested bidder who wanted to remain

anonymous. Obrecht refused to tell Erwin the bidder's name because, as he explained at trial,

> [T]he guy gave me his name in confidence. That's the only way I could get his name and his telephone number. So I felt that was important. My job, again, is to get bidders to the auction. And I needed . . . that gentleman to work with me to get a starting bid.

The real estate professionals who testified at trial stated that it was common for potential bidders to want to remain anonymous. But Obrecht testified that Erwin was not happy when he would not disclose the interested bidder's name: "Basically, long and short of it was, I can't trust you, that type of thing." After that conversation, Obrecht sent Erwin a text message that asked, "Do you want to proceed with the auction?" Because his phone deletes text messages after thirty days, Obrecht could not produce that text at trial, but he testified that Erwin replied, "[N]o, I can't work with someone I can't trust." This testimony was supported by text messages with Etnyre that Erwin offered as exhibits at trial. In one, Erwin texted Etnyre that he was "really not trusting Jeff right [now] it's bullshit he doesn't have names and number we are not in a good place right now." And in others, Erwin demanded the return of the abstract for the farmland "or other actions will be taken."

In the midst of these text messages, Etnyre testified that Erwin called him and told him to "get your effing signs off my effing farms." So Etnyre drove out to remove the signs Mid Iowa had posted on the farmland to advertise the auction. When he got there, Erwin was waiting for him. They talked a bit about the abstract, but Erwin never told Etnyre to keep the signs on the farmland or that he wanted to go forward with the auction. Later that night, Obrecht emailed Erwin's attorney

that "there appears to be a parting of the ways with the owners and my real estate company because the seller does not feel we have been honest with him, he has decided to cancel the auction with our company." Neither Erwin nor his attorney replied to that email. As a result, the auction for June 30 was cancelled.

The land trust argues the evidence at trial only showed a "negative attitude" on Erwin's part, not "a definite and unequivocal repudiation of the contract." *Lane*, 199 N.W.2d at 82. It also asserts that Obrecht—not Erwin—told Etnyre to remove the signs and that Erwin did not demand the return of his abstract until after the signs were removed. And the land trust disputes Obrecht's testimony that Erwin confirmed he did not want to proceed with the auction. But evidence "is not insubstantial merely because we may draw different conclusions from it." *NevadaCare, Inc.*, 783 N.W.2d at 468 (citation omitted). The land trust's arguments ask us to reweigh the evidence and assess the credibility of the witnesses—tasks that we cannot engage in when reviewing for the correction of errors at law. *EnviroGas, L.P. v. Cedar Rapids/Linn Cnty. Solid Waste Agency*, 641 N.W.2d 776, 785 (Iowa 2002).

The district court found the evidence outlined above persuasive, especially considering the testimony and evidence detailing the time, money, and effort Obrecht expended before the auction in advertising the property and speaking to interested buyers. This evidence constitutes substantial evidence supporting the district court's findings, so we are bound by it on appeal. *NevadaCare, Inc.*, 783 N.W.2d at 468. We accordingly affirm the district court's finding on repudiation.[2]

---

[2] To the extent that the land trust claims Erwin retracted his repudiation, we find that issue was not preserved for our review because it was not raised or decided

This leaves us with Mid Iowa's request for appellate attorney fees. The parties' contract states, "In the event it becomes necessary for either party to collect any sum or sums due through legal action, Seller(s) waives venue and agrees to pay all costs and expenses of such an action, including reasonable attorney's fees." We grant Mid Iowa's request and remand to the district court for a determination of reasonable attorney fees. *See* Iowa Code § 625.22(1) (2023) ("When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court."); *Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (awarding appellate attorney fees under Iowa Code section 625.22 when "the written agreement provided for attorney fees and in no way limited them to costs in the trial court").

**AFFIRMED AND REMANDED WITH DIRECTIONS.**

by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (stating that "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal").